IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GLENN SPRADLEY,

    Petitioner,

vs.                                        Cause No. 1:04cv4-MMP/AK

FLORIDA PAROLE COMMISSION,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent has answered the petition, Doc. 8, and Petitioner has filed a reply and a motion for Rule 11 sanctions. Docs. 9 & 10. Having carefully considered the matter, the Court recommends that the petition be denied.

BACKGROUND

On May 20, 1980, Petitioner was convicted of attempted first degree murder, aggravated assault, false imprisonment, and trespass with a firearm. Doc. 8, Ex. A-D. He was sentenced to life on the attempted murder conviction and to consecutive terms of imprisonment ranging from five to fifteen years on the other convictions. *Id.* On June 11, 1980, Petitioner was convicted of throwing a deadly missile into an occupied vehicle

and was sentenced to five years imprisonment concurrent to the life sentence.  Doc. 8, Ex. E.

On April 29, 1981, the Respondent, Florida Parole Commission, established Petitioner's presumptive parole release date[1] (PPRD) as November 7, 2000.  Doc. 8, Ex. F.[2]  At its February 9, 1983, meeting, the Parole Commission made no change to Petitioner's PPRD.  Doc. 8, Ex. G.  On December 12, 1984, the Parole Commission reduced Petitioner's PPRD by six months to May 7, 2000, based on Petitioner's "above satisfactory" progress and adjustment.  Doc. 8, Ex. H.  The Commission made no change to his PPRD at its February 11, 1987, meeting.  Doc. 8, Ex. I.  However, at its January 27, 1988, meeting, the Commission recommended a twelve-month reduction in Petitioner's PPRD to May 7, 1999, based on Petitioner's clean disciplinary record and his above satisfactory work.  Doc. 8, Ex. J.  On June 6, 1989, the Commission reduced Petitioner's PPRD by an additional twelve months to May 7, 1998, based on his "outstanding record of program participation...."  Doc. 8, Ex. K.[3]  At its May 23, 1990, meeting, the Commission left the PPRD as May 7, 1998.  Doc. 8, Ex. L.  On April 1, 1992, the Commission increased Petitioner's PPRD by six months to November 7, 1998, on the ground that Petitioner's institutional record had been "unsatisfactory."  Doc.

---

[1] The presumptive parole release date is the "tentative parole release date as determined by objective parole guidelines."  Fla. Stat. Ann. § 947.005 (4).

[2] Though the Court cannot verify this date because of the illegibility of parts of this exhibit, Petitioner does not dispute Respondent's representation in this regard.

[3] This document refers to its "other side" for support for the Commission's conclusion regarding Petitioner's program participation.  Doc. 8, Ex. K.  However, Respondent did not provide the Court with the "other side."

8, Ex. M.  Petitioner's PPRD remained undisturbed following the Commission's 1994, 1996, and 1997, meetings.  Doc. 8, Ex. N-P.

With his PPRD approaching, Petitioner's effective parole release date[4] (EPRD) interview was held on August 27, 1998.  Doc. 8, Ex. Q.  On September 30, 1998, a panel of the Parole Commission referred Petitioner's case to the full Commission for "extraordinary review" after it "[f]ailed to make a positive finding" as required by Fla. Stat. Ann. § 947.18.[5]  Doc. 8, Ex. R.

On October 29, 1998, the Commission "decided NOT to authorize [Petitioner's] Effective Parole Release Date" and thus suspended his PPRD of November 7, 1998. Doc. 8, Ex. S (emphasis in original).  The Commission reached its decision "[a]fter reviewing all the information in [Petitioner's] Department of Corrections file...." *Id.* Included in its considerations were the following:

> (1) the "particularly serious" circumstances of the crimes for which Petitioner was convicted,[6]
>
> (2) his prior criminal history,[7]

---

[4]The effective parole release date is "the actual parole release date as determined by the presumptive parole release date, satisfactory institutional conduct, and an acceptable parole plan."  Fla. Stat. Ann. § 947.005(5).

[5]In pertinent part, § 947.18 states: "No person shall be placed on parole until and unless the commission finds that there is reasonable probability that, if the person is placed on parole, he...will live and conduct himself...as a respectable and law-abiding person and that the person's release will be compatible with his...own welfare and the welfare of society."

[6]Petitioner's 1980 convictions centered on Petitioner's shooting a police officer and holding a young child hostage.  Doc. 8, Ex. S.

[7]This included 1973 convictions for burglary and an extensive juvenile record from 1970-1971, in which Petitioner repeatedly violated probation and was consequently adjudicated a delinquent.  *Id.*

(3) his history of substance abuse,[8]

(4) Petitioner's "need of continued observation, therapy, and evaluation,"[9]

(5) his "minimal participation in rehabilitative or self-betterment programs,"[10]

(6) Petitioner's "unsatisfactory institutional conduct,"[11]

(7) Petitioner's use of threatening language towards a state judge and a federal judge,[12] and

---

[8]In his Classification and Admissions Summaries, Petitioner claimed he was under the influence of alcohol when he shot the officer, and he indicated that although he was only "almost" addicted, he used drugs, specifically heroin, "very heavily in the past" and that he occasionally used alcohol and marijuana. *Id.*

[9]According to Petitioner's May 7, 1998, Psychological Evaluation, he was "unrealistically virtuous," a "test-taking attitude [which] weakens the validity of the test and shows an unwillingness or inability on the part of the individual to disclose personal information." *Id.* The Commission continued:

> From his responses on the test, [Petitioner] appears to be sullen, mistrustful, and self-indulgent [and] to disregard authority figures, deny responsibility, and blame others for his problems. He may be easily angered over seemingly insignificant events. He is described as one who has difficulty managing routine affairs...and an inability to make decisions. He views the world as a threatening place and sees himself as having been unjustly blamed for problems....He appears to be oversensitive, irritable, and easily becomes angry with others. This predisposes him to interpersonal stress. Although the 1998 report shows some favorable aspects, the Commission feels that the inmate is in need of continued observation, therapy, and evaluation.

*Id.*

[10]The Commission cited five instances of Petitioner's participation in rehabilitative or self-betterment programs in eighteen years of imprisonment. *Id.*

[11]The Commission identified only one disciplinary report–for disobeying a verbal order--issued to Petitioner between 1980 and 1998. *Id.*

[12]In this regard, the Commission referred to letters from the Florida state attorney and the United States attorney to the Department of Corrections referencing two separate instances of Petitioner's filing court documents which contained language

> (8) the continued worker's compensation payments being made on behalf of the police officer whom Petitioner shot.

*Id.*

In concluding that it was unable to make a positive finding that Petitioner's release "would be compatible with his welfare and the welfare of society" and that there was a "reasonable doubt" as to whether Petitioner "would remain free of any criminal conduct should parole be granted," the Commission stated:

> [Petitioner's] conviction for the instant offense, his disregard for authoritative figures, his lack of motivation for rehabilitation, and his failure to cope outside a structured setting, as evidenced by his violation of probation, are not conducive indicators for a successful parole. The Commission feels the inmate is in need of continued observation and treatment.
>
> [A]lthough his coping skills may be somewhat adequate for a structured setting, such as provided by a correctional institution, we find a lack of treatment exists and that he has a propensity for criminal conduct, representative of a repeat offender. Thus, we forecast a negative prognosis for acceptable re-socialization and a strong likelihood this behavior may demonstrate to be hazardous to others.

*Id.*

The Commission therefore suspended Petitioner's PPRD and set off his next parole interview for five years to June, 2003, based on the fact (1) that the offense involved the use of a firearm or dangerous weapon, (2) that Petitioner needed mental health treatment, and (3) that Petitioner's release might cause unreasonable risk to others. *Id.* The Commission cited no statutory authority for this 5-year set-off.

Approximately four years later, September 12, 2002, Petitioner filed a petition for writ of mandamus in state court challenging the Commission's decision. Doc. 8, Ex. T.

---

which was "threatening in nature" or "interpreted as possibly threatening...."*Id.*

As grounds for mandamus relief, Petitioner charged that the Commission erred in considering the worker's compensation payments and the letters from the state and federal attorneys and in setting off the next review for five years. *Id.* He also alleged that the record failed to support the Commission's conclusion that he would not be a law-abiding citizen and that his release would be incompatible with his own welfare and the welfare of society.[13] *Id.*

The state court denied the petition for writ of mandamus, finding (1) that the Commission's use of Petitioner's inmate file as the source for its conclusion regarding Petitioner's past drug use was proper, (2) that Petitioner failed to demonstrate that the Commission abused its discretion in concluding that Petitioner was in need of mental health treatment or in failing to note one instance of Petitioner's self-betterment which was not a part of his inmate file, and (3) that the Commission properly considered the letters regarding the threats to judges. Doc. 8, Ex. U. The court also found that applying the five-year statutory set off in Fla. Stat. Ann. § 947.1745 was not an abuse of the Commission's discretion and was not an ex post facto violation. *Id.* The court did not address the issue related to the worker's compensation payments.

Petitioner then filed a petition for writ of certiorari with the court of appeal, Doc. 8, Ex. V, which the court denied. Doc. 8, Ex. W. The court also denied rehearing, *id.*, and the instant petition followed on January 12, 2004. On this occasion, Petitioner charges that the Commission violated his due process rights (1) by considering the medical costs and wages disbursed by the victim policeman's employer, (2) by using the

---

[13]More specifically, Petitioner challenged the evidence of Petitioner's history of substance abuse, his need for mental health treatment, and his minimal rehabilitation efforts. Doc. 8, Ex. T.

Classification and Admission Summary as the basis for the substance abuse conclusion, (3) by concluding that Petitioner minimally participated in rehabilitative and self-betterment programs when it had previously praised his efforts and by failing to consider his successful completion of a wellness program in August, 1998, (4) by concluding that Petitioner needed mental health treatment when the mental health examiner did not advance that conclusion, (5) by considering the letters from the state attorney and the United States attorney because the court documents were not "true threats," only "constitutionally protected speech," and (6) by applying a five-year, rather than a two-year, setoff for the next parole interview.  Doc. 1.

Respondent has answered the petition, addressing each of the claims in turn.[14]

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than

---

[14] Respondent has not challenged the timeliness of the petition or addressed the question of mootness or the appropriateness of considering this matter pursuant to the habeas statute as opposed to § 1983.  This Court will likewise not address those issues.

[the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412.

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the

reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id.* at 1254-55.

Finally, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

## **DISCUSSION**

Florida's parole system leaves the decision of whether or not to grant parole "to the discretion of the [Parole] Commission..." *Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986) (citing *Moore v. Florida Parole & Probation Commission*, 289 So. 2d 719 (Fla. 1974)). While it is true that prisoners may "claim the protections of the Due Process Clause," *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), due process exists to protect a liberty interest. "There is no constitutional right to parole in Florida." *Jonas*, 779 F.2d at 1577 (citing *Hunter v. Florida Parole & Probation Commission*, 674 So. 2d 847, 848 (11th Cir. 1982)).[15] Because there is no liberty interest in parole, there is generally no trigger to bring in the protections of the Due

---

[15] "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right." Fla. Stat. Ann. § 947.002(5).

Cause No. 1:04cv4-mmp/ak

Process Clause.  *Hunter*, 674 F.2d at 848 (rejecting claim that Commission improperly calculated presumptive parole release date and thus, violated due process; holding that because there was no liberty interest in parole, there was no due process violation). Because a prisoner has no liberty interest in obtaining parole in Florida, he cannot complain about the constitutionality of procedural devices attendant to parole decisions, including the interval between parole hearings.  *See Allison v. Kyle*, 66 F.3d 71, 73-74 (5th Cir. 1995); *see also Staton v. Wainwright*, 665 F.2d 686 (5th Cir.), *cert. denied*, 456 U.S. 909 (1982) (because Florida parole statutes do not create protectable liberty interest in parole, there is no constitutional right to timely initial interview).

The only potential exception is the use of false information by the Parole Commission.  *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) (holding that Parole Board's discretion does not permit it to knowingly rely on false information to deny inmate parole); *see also Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982) (stressing that "absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts"); *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 932 (11th Cir. 1986) (finding that inmate "raised a colorable due process claim with respect to the use of procedurally flawed disciplinary reports in modifying a PPRD").

None of Petitioner's claims involve any allegation that the Commission relied on false information in reaching its conclusions.  Although Petitioner certainly disputes the conclusions reached by the Commission, he does not deny that he used drugs in the past, that he wrote the letters referenced in the report, or that his mental health

Cause No. 1:04cv4-mmp/ak

evaluation contained some negative aspects. *Cf. Catlett v. Henry*, 4:02cv282-RH/WCS (N.D. Fla. R&R filed Feb. 20, 2004) ("If relying on false information is an 'arbitrary and capricious act which violates the Due Process Clause,' then making conclusions without any foundation must also be an arbitrary and capricious act"). Without evidence that the documents used in denying him parole were false or contained fraudulent information, no right to due process is implicated. In that same vein, the Commission's use of any truthful information, including matters related to the health and welfare of the victim and the economic consequences of the Petitioner's unlawful acts, is not violative of due process. Furthermore, the failure of the Commission to consider one instance of self-betterment, which apparently was not in Petitioner's file, does not indicate any flagrant or unauthorized activities on the part of the Commission. The state court's conclusion that "[i]t cannot be said that the Commission would have authorized his release on parole on the basis of his completion of this one program," Doc. 8, U, is fully reasonable and supported by the record.

      As to Petitioner's remaining claim regarding the establishment of the five-year set-off, the Court finds that it must also fail. Because there is no due process right to parole in Florida and the parole statutes set five years as the outside time for subsequent reviews based on Petitioner's conviction for attempted murder, *see* Fla. Stat. Ann. §§ 947.174 and 947.1745, and vest the Commission with discretion to schedule such reviews earlier, there is no due process violation in maintaining a five-year set-off in reviewing Petitioner's parole status.

      With regard to Petitioner's request for sanctions, the Court finds it not to be well taken. Respondent correctly represented the state of the record and stated the law with

regard to parole correctly.  The fact that Respondent chose to attack Petitioner's claims in the manner advanced is insufficient to implicate an award of sanctions.

In light of the foregoing, it is respectfully **RECOMMENDED** that the petition for writ of habeas corpus, Doc. 1, be **DENIED**, the cause be **DISMISSED** with prejudice, and the motion for sanctions, Doc. 10, also be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **18th** Day of November, 2004.

      s/ A. KORNBLUM
      **ALLAN KORNBLUM**
      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**